UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | NO. 2:08-CR-39 |
| | ) | |
| BOBBY JOE AMBROSE | ) | |

SUPPLEMENTAL REPORT AND RECOMMENDATION

This matter is before the Court for a supplemental report and recommendation with respect to defendant Bobby Joe Ambrose's Motion to Suppress [Doc. 127]. On February 4, 2009, the Court conducted an evidentiary hearing on this Motion.[1] After extensive briefing and argument, the Court issued a report and recommendation [Doc. 169], recommending the denial of the defendant's Motion. This report and recommendation was adopted by Senior District Judge Jordan, and the Motion was denied [Doc. 196]. Following his trial and conviction, the defendant appealed to the United States Court of Appeals for the Sixth Circuit. The Court of Appeals affirmed the findings of the Court regarding the Motion to Suppress insofar as they went, but remanded the case for further findings. *United States v. Beals, Miller and Ambrose*, 698 F.3d 248 (6th Cir. 2012).

All of the factual findings in the previous report and recommendation [Doc. 169] are incorporated herein by reference. To briefly summarize, this involves the search of certain premises at 106 Union Street in Erwin, Tennessee on the night of April 22, 2008, by officers from the Unicoi County Sheriff's Office and the Erwin Police Department, where the defendant was operating a "meth lab" for the production of methamphetamine. The

---

[1] A second hearing was held on February 11, 2009 to hear the testimony of Judge Robert Cupp, the issuing official of the state search warrant involved in this prosecution. However, the testimony of Judge Cupp has no bearing on the issues involved in this supplemental report and recommendation.

application, affidavit and the search warrant itself were prepared by Major Michael Hensley of the Unicoi County Sheriff's Department and presented to State Criminal Court Judge Robert Cupp, who issued the warrant. The warrant authorized the search of "the entire garage area of 106 Union Street and vehicles inside..." Defendant Ambrose, his wife Lindsey Ambrose and their then-infant son resided in an apartment located in this same structure. Besides having a back door, this apartment is connected to the garage by a corridor, all as set out in the original report and recommendation. There is no dispute that the search warrant did not authorize a search of the apartment at issue.

The Sixth Circuit has remanded the case for the Court to make findings regarding three issues not fully addressed in the original report and recommendation. *See, Beals, Miller and Ambrose*, 698 F.3d 248, 267-68. All involve the entry into, and alleged search of, the apartment in which defendant and his family resided. The defendant alleges that the officers entered the apartment without the consent of Mrs. Ambrose, that they searched the apartment without her consent, and that they later searched it more thoroughly after Mrs. Ambrose departed to take her child to the hospital to be checked for possible methamphetamine poisoning. Defendant argued to the Sixth Circuit that these actions on the part of the officers transformed the search warrant for the garage area and vehicles therein into a "general warrant." If one or more of these improper events took place the Court of Appeals instructed this Court is to determine whether blanket suppression of all evidence seized from 106 Union Street isan appropriate sanction and, if so, to determine the effect of that suppression on defendant's convictions and sentence.

In order to comply with the Sixth Circuit's decision, and the referral of the District

2

Judge for this supplemental report and recommendation, the Court has reviewed in its entirety the transcript from the February 4, 2009 hearing [Doc. 176], and the notes taken by the undersigned at that hearing. From all of this, and the Court's recollections regarding credibility of the various witnesses, the Court is prepared to address the issues raised by the Court of Appeals without the necessity for additional testimony. As pointed out by the Sixth Circuit, there was testimony at the hearing put forth by both the government and the defendant on each of the issues involved in the remand. The Court simply did not resolve those factual disputes in the previous report and recommendation.

With respect to first issue, the initial entry of the officers into the apartment, the factual dispute is properly set forth in the Sixth Circuit's opinion as follows:

> [o]fficers testified that when they knocked on Ambrose's apartment door in their attempt to secure consent to search the garage, R.176 at 186–87, Mrs. Ambrose opened it and freely let them in. R.176 at 43 ("[W]e asked if we could come in, she invited us in."), 65 ("I told her who we were, identified ourselves, told her why we were there. She invited us in, told us to come in[.]"). The officers then walked through the apartment and into the hallway that leads to the garage. *Id.* at 43–44. According to Mrs. Ambrose, the officers entered her apartment without asking. *Id.* at 105. In fact, she asked to get dressed before they came in, but the officers said "no," pushed open the door, and came in anyway. *Id.* at 105–06. She said she never invited them in or otherwise gave consent for them to enter. *Id.* at 109–10.

*Id.*, at 267, 268.

The testimony of these officers did not equivocate on the issue of whether Mrs. Ambrose invited them in, or whether they entered the apartment without her consent. The Court believed at the time, and believes today, that the officers told the truth, and that they did not enter the apartment until invited inside by Mrs. Ambrose after she chose to open the door. Their testimony is credible and consistent. In fact, one of their priorities was to "make contact with the Ambroses, even before we utilized the search warrant, to try to obtain a

3

consent to search (the garage)." [Doc. 176 at 186-87].

The factual dispute regarding the second issue is whether the search conducted in the apartment was at Mrs. Ambrose's request or illegally carried out by the officers on their own initiative.[2] Once again, the Sixth Circuit has clearly set forth the competing testimony as follows:

> [M]ajor Hensley and Ronnie Adkins, Chief Investigator for the Unicoi County Sheriff's Department, both testified that they searched Ambrose's apartment at his wife's request. *Id.* at 46–47, 51, 69–70. According to both officers, when they explained to Mrs. Ambrose the basis for their search of the garage, she became concerned for her own and her young child's safety and asked the officers to "look around" her apartment for toxic items related to methamphetamine. They did so and found nothing of concern. *Id.* Mrs. Ambrose flatly denies asking officers to search her apartment. *Id.* at 109, 113–14.

*Id.*, at 268.

The officers again were clear on their testimony in this regard. The Court observed their demeanor as they described Mrs. Ambrose's understandable concern for the safety and well being of her infant son when she, by her own account, learned that methamphetamine was being "cooked" in the garage scant feet away from where they lived. Their testimony was believed: the Court finds that defendant's wife requested and directed the search of the apartment for substances which could prove harmful to her and her son.

The third factual dispute regards the conflicting testimony of defendant's mother, sister and wife with that of the officers as to whether a further search took place in her apartment after she left the apartment with her son. The Sixth Circuit frames the factual

---

[2]This search is a different matter from the search for the key to vending machine in the garage. That quest to find the key in the drawer to the defendant's night stand, with the officer accompanied by the defendant's wife, was upheld by the Sixth Circuit. *Id.*, at 267.

4

dipute as follows:

> [A]mbrose's mother and sister testified that they watched officers search Ambrose's apartment *after* Mrs. Ambrose left to take her son to the hospital. *Id.* at 117–18, 124–25, 131. His mother saw officers take the mattress off the bed and rummage through dresser drawers. *Id.* at 118. Mrs. Ambrose corroborated this testimony, stating that it appeared her apartment had been thoroughly searched—her mattress was out of place, clothes were on the floor, and dresser drawers were left open. *Id.* at 110. The officers, however, testified to the contrary. *Id.* at 71 ("Q. Okay. You did not search that apartment where the young lady was? A. Only the area that she requested.").

Once again, the Court believes the officers told the truth, and that they only searched the areas she requested while they were looking for substances that might harm her and her child. The Court finds that no search was done outside the presence of defendant's wife.

In summation, the Court finds that the officer's were truthful regarding their actions regarding all three areas of inquiry set out in the Court of Appeals' decision. Accordingly, it is not necessary to address the issue of whether a blanket suppression of the incriminating evidence found in the garage is appropriate. Accordingly, it is RESPECTFULLY RECOMMENDED, once again, that the defendant's Motion to Suppress [Doc. 127] be DENIED.[3]

                                    Respectfully recommended:

                                         s/ Dennis H. Inman
                                         United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).